IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. GARY HOPPER

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 03-03770, 03-00924      W. Otis Higgs, Jr., Judge**

———————————

**No. W2004-00978-CCA-R3-CD  - Filed March 31, 2005**

———————————

The defendant, Gary Hopper, pled guilty in two separate cases to vehicular assault as the result of intoxication, a Class D felony; reckless aggravated assault, a Class D felony; and leaving the scene of an accident, a Class A misdemeanor, for which he received an effective sentence of seven years, eleven months and twenty-nine days in the county workhouse as a Range II, multiple offender. The sole issue he raises on appeal is whether the trial court should have sentenced him to community corrections instead of incarceration. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Robert J. Ross, II, Memphis, Tennessee, for the appellant, Gary Hopper.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The defendant's convictions stemmed from two separate driving incidents that occurred on November 1 and November 6, 2002, in Shelby County. At the sentencing hearing, the prosecutor reminded the trial court of the facts that formed the basis for the guilty pleas, stating that in the first incident, the defendant was driving recklessly on Highway 385 at 10:30 a.m. when he swerved and struck a truck and two pedestrians. The prosecutor said one of the victims suffered a fractured pelvis, a ruptured bladder, a skull fracture that resulted in permanent brain damage, and injuries to his left leg which required amputation of that leg from the knee down, while the other victim suffered fractures to both legs and ankles. He stated that the defendant's blood tested positive for

marijuana, Diazepam, Lorazepam, and Methadone. In addition, the arresting officers found three bottles of Methadone in the defendant's vehicle. As for the second case, the prosecutor stated that on November 6, 2002, the defendant left the scene of an accident after striking another vehicle but that no one was injured in that incident.

Dr. Allen Pelletier, the defendant's physician, testified that the defendant was diagnosed in 1999 with Hepatitis C, "a treatable viral illness that causes damage to the liver." He said the disease, which was progressive, had begun to materially affect the functioning of the defendant's liver and had resulted in the defendant's experiencing periods of acute confusion and disorientation. He testified he had consulted with Dr. Karen Riley,[1] a University of Tennessee professor at the Shelby County Medical Center, who was prepared to begin treating the defendant with daily doses of Riboflavin and weekly injections of Interferon, which, according to Dr. Pelletier, causes "significant" side effects. Because of those side effects, a patient on such treatment requires careful monitoring. He testified the treatment could last up to one year and that it had to continue uninterrupted once it was begun. Although there was "no guarantee" that the defendant's liver disease could be reversed or its course improved with the treatment, the treatment offered the defendant's "only hope for a cure." Moreover, "[a] delay in treatment . . . would prove potentially very dangerous" to the defendant. Dr. Pelletier said he was "not at all certain" the defendant would get the proper medical attention while incarcerated or, should the defendant be given a split sentence allowing for treatment outside of the jail, that the side effects of the drug could be properly monitored during the time the defendant spent in a jail environment. In sum, he was of the opinion that a seven-plus-year sentence in incarceration would "be tantamount to a death sentence" for the defendant.

Dr. Pelletier testified he first saw the defendant in late November 2002, approximately three weeks after the defendant's automobile accident. He believed the disorientation the defendant exhibited at that time was caused by his Hepatitis C, but he could not rule out the possibility that it was related to several concussions the defendant had received in incidents unrelated to his car accident. Dr. Pelletier testified that his understanding was that all of the drugs found in the defendant's system after the November 1, 2002, accident, with the exception of the marijuana, had been prescribed. He acknowledged on cross-examination, however, that Diazepam is a muscle relaxer which "certainly . . . can affect one's ability to operate a motor vehicle." He further acknowledged he had not visited any jails within the past ten years, had no knowledge of the medical care available to an inmate, and did not know if it was possible for the defendant to receive the required treatment for Hepatitis C while incarcerated.

At the conclusion of the hearing, the trial court denied the defendant's request for alternative sentencing, finding that the seriousness of the offenses and the defendant's lengthy criminal history warranted a sentence of confinement and that the defendant's medical needs could be met by placement in an appropriate facility. Thereafter, the defendant filed a timely notice of appeal, challenging the trial court's sentencing determinations.

---

[1]This individual's first name is spelled in the transcript as both "Karen" and "Carolyn."

# ANALYSIS

The defendant contends that the trial court should have sentenced him under the Community Corrections Act where he can be assured of getting the proper treatment for his Hepatitis C instead of gambling on the chance that he will be able to obtain proper treatment while incarcerated. The State argues, *inter alia*, that the defendant's extensive criminal history and the circumstances surrounding the offenses justify a sentence of incarceration. We agree with the State.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. Therefore, the burden is on the defendant to show that the trial court erred in sentencing him to incarceration rather than community corrections.

Initially, we note that as a Range II offender, the defendant is not presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (2003). A sentence under the Community Corrections Act is an alternative sentence. State v. Grigsby, 957 S.W.2d 541, 544 (Tenn. Crim. App. 1997) (citing State v. Taylor, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987)). The Community Corrections Act permits trial courts to sentence certain nonviolent felony offenders, who are either not eligible for probation, or not good candidates for probation, to community-based alternatives to incarceration. Id. at 548; see Tenn. Code Ann. §§ 40-36-103, -104 (2003). The legislature's purpose in enacting the Community Corrections Act was to "provide 'a degree of

flexibility' consistent with societal aims not previously available under the more traditional methods of correction." State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999).

Offenders who meet all of the following minimal requirements are eligible for community corrections:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1) (2003). In addition, "[p]ersons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community." Tenn. Code Ann. § 40-36-106(a)(2).

The State correctly observes that the defendant does not meet the minimum requirements for sentencing under the community corrections program, having been convicted of vehicular assault and reckless aggravated assault, both of which constitute assaultive offenses against the person in title 39, chapter 13, part 1 of the Tennessee Code. Furthermore, his presentence report, which reveals an extensive criminal history including prior convictions for aggravated assault, armed robbery, and a weapons offense, shows the defendant to be an individual with both a pattern of behavior indicating violence and a pattern of committing violent offenses.

Notwithstanding the fact that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed," Tenn. Code Ann. § 40-35-103(4), a trial court is authorized to impose a sentence involving confinement upon a finding of any one of the following factors:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code. Ann. § 40-35-103(1). Before imposing the sentence, the trial court noted the serious harm the defendant had caused to the victims by his actions in driving under the influence of multiple intoxicants; the defendant's extensive criminal history, including his commission of several violent felonies; the fact that the defendant had received a total sentence of almost 100 years in the penitentiary for the those prior convictions and yet continued to offend; and finally, the danger the defendant posed to the community as a whole. The record fully supports these findings. The essential facts surrounding the offenses, as stated by the prosecutor, were not disputed by the defendant, with defense counsel, in fact, offering to stipulate that the facts of the case were "horrible." Furthermore, the defendant's criminal history, which covers seven full pages of his presentence report, reflects numerous prior convictions, including at least fourteen felony convictions ranging from armed robbery, aggravated assault, petit and grand larceny, breaking and entering, the sale, manufacture or possession of drugs, and credit card fraud. Therefore, ample evidence exists in this case to support a sentence of incarceration.

The defendant asserts that his physician's concerns about whether he will be able to receive the proper treatment for his illness while incarcerated should outweigh other factors in favor of incarceration. However, the physician acknowledged he had no personal knowledge of the level of medical care available to an inmate and could not, therefore, state with certainty that the defendant would not receive proper care while incarcerated. Furthermore, the trial court did not ignore the defendant's medical issues in imposing sentence, stating that it was aware of the fact that University of Tennessee physicians were under contract to provide medical care to inmates at the Shelby County Correctional Center and that the Tennessee Department of Correction also had physicians on contract to provide medical care for its inmates. The trial court advised defense counsel to speak with officials at both facilities and inform the court as to which placement would be best for his client. Thus, the trial court appropriately took the defendant's medical needs into consideration in imposing the sentence of incarceration. As the State points out, this court has previously affirmed the denial of alternative sentencing in spite of evidence that a defendant suffers from a serious medical condition or illness. See State v. Vicki D. Walden, No. E2003-02710-CCA-R3-CD, 2004 WL 2319761, at *2 (Tenn. Crim. App. Oct. 15, 2004) (affirming denial of alternative sentence to defendant who testified she is required to be on oxygen constantly and undergo breathing treatments every six hours); State v. Darrell Kenneth McConnell, No. 03C01-9604-CC-00148, 1998 WL 75339, at *2 (Tenn. Crim. App. Feb. 24, 1998), perm. to appeal denied (Tenn. Nov. 16, 1998 & Dec. 7 1998) (affirming denial of alternative sentencing to defendant suffering from heart condition). We conclude, therefore, that the trial court did not err in denying the defendant's request for a community corrections sentence and in ordering him to serve his sentence in incarceration.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE